IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAIME LOMELI GOMEZ,

    Petitioner,   No. CIV S-01-0276 DFL JFM P

    vs.

JOE MCGRATH,

    Respondent.   FINDINGS AND RECOMMENDATIONS

    /

    Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges on several grounds his 1994 conviction on charges of first degree murder in violation of California Penal Code § 187 combined with a jury finding that a principal had been armed in the commission of the offense.

FACTS[1]

    Erik Hopper and Christine Nicola resided together at the Copper Lantern Motel in South Lake Tahoe.  For several months, Erik and Christine had been having problems with two other motel residents, Cindy Milan and Sunshine Tonne.

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Gomez, No. C019221 (Nov. 1, 1997), a copy of which is appended as Exhibit D to Respondent's April 23, 2001 Motion for Summary Dismissal and/or More Definite Statement (hereafter "Motion for Summary Dismissal").

On August 21, 1993, the four were involved in a confrontation in which Cindy and Sunshine tried to slam Erik's car door on Christine's leg. At 10:30 that evening, Christine found "You will die," "Sur 13,"[2] and "Die slut" written on her car in lipstick. Erik and Christine's apartment[3] did not have a telephone, so they called police from a pay phone and then returned to their apartment. When they realized Cindy, Sunshine, and others were throwing rocks at Erik's car, they again went to a pay phone and called the police. When they returned, four young men who were with Cindy and Sunshine began throwing rocks. Erik and Christine again telephoned for help.

The police arrived. Erik spoke with the police outside, then returned to the apartment, where Christine and her two-year-old son were waiting. Within a few minutes, there was a knock at the door. Erik opened the door, and Christine could see at least three young men. One of the three men had a coat draped over his arm. After a brief conversation, a sawed-off shotgun was revealed from under the coat. The man with the gun said, "This is for you, brother," and fired three shots. The first two shots hit Erik in the chest and in the hand. From Erik's hand, the shot went over Christine's head and into a wall."[4] The third shot hit Erik in the back. Erik died from the gunshot wound to the chest.

At trial, [petitioner] testified Jesus Gonzalez handed him a gun; when [petitioner] realized they were going to the motel, he gave the gun back to Gonzalez and ran back to the car. Gonzalez, who had entered a plea to the murder charge, testified [petitioner] gave him the gun. When Erik opened the door, [petitioner] told Gonzalez to shoot and he did so.

(People v. Gomez, slip op. at 1-3.)

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

/////

---

[2] "Sur 13" referred to the South Side 13 gang.

[3] Although Erik, Christine, Cindy, and Sunshine resided at a a motel, the trial testimony refers to the motel rooms as "apartments."

[4] The jury acquitted [petitioner] of attempting to murder Christine.

2

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

/////

II. Petitioner's Claims

    A. Conducting Peremptory Challenges at Sidebar

Petitioner's first claim is that his Sixth Amendment right to a public trial was violated by the trial court's decision to conduct peremptory challenges at sidebar without a court reporter present. The last reasoned state court rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District, which held that petitioner had waived the challenge by failing to object at trial. (People v. Gomez, slip op. at 3-4.)

"Although a defendant charged with a felony has a fundamental right to be present during voir dire, this right may be waived. See Campbell v. Wood, 18 F.3d 662, 672-73 (9th Cir.1994) (en banc) (defendant in a capital case waived his right to be present during voir dire by expressing his desire not to be present)." U.S. v. Sherwood, 98 F.3d 402, 407 (9th Cir. 1996). In Sherwood, the United States Court of Appeals for the Ninth Circuit held that a criminal defendant waived his right to be present at sidebar during the exercise of peremptory challenges by failing to indicate to the court his desire to be there. Id.

Petitioner's trial counsel did not object to petitioner's absence from sidebar during the exercise of peremptory challenges, and petitioner did not ask to be present. The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner's first claim for relief should be denied.

    B. Denial of Motion for Change of Venue/Ineffective Assistance of Counsel

Petitioner's second claim for relief is that the trial court erred in denying without prejudice his motion for change of venue, and that his attorney was ineffective in failing to renew the motion. The last reasoned rejection of the claim is the decision of the state court of appeal on petitioner's direct appeal.

The state court of appeal rejected the claim of trial court error on the ground that petitioner had waived the claim by failing to renew the motion after the trial court denied it without prejudice to its renewal after the jury had been voir dired on issues related to the motion.

(People v. Gomez, slip op. at 4-5.)  The court of appeal rejected the ineffective assistance of counsel claim on the ground that the record showed a tactical reason for counsel's failure to renew the motion, specifically that the record showed the jury was "obtained quickly and with . . . few challenges," so it "appear[ed] counsel was reasonably satisfied with the juror pool."  (Id. at 5.)

Petitioner's claim of trial court error is predicated solely on state law grounds and thus is not cognizable in this federal habeas corpus proceeding.  See, e.g., Engle v. Isaac, 456 U.S. 106, 119 (1982) (federal writ of habeas corpus available only for error of federal law binding on state courts and not for alleged violation of state law).

The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . .

. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

> A criminal defendant facing trial by jury is entitled to be tried by "a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). Accordingly, a trial judge must grant a motion for change of venue if prejudicial pretrial publicity makes it impossible to seat an impartial jury. Harris v. Pulley, 885 F.2d 1354, 1360 (9th Cir.1988).  As we recently noted, A defendant need only demonstrate one of two different types of prejudice in support of a motion to transfer venue: presumed or actual.  Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime. Prejudice is rarely presumed because "saturation" defines conditions found only in extreme situations. To establish actual prejudice, the defendant must demonstrate that the jurors exhibited actual partiality or hostility that could not be laid aside. United States v. Sherwood, 98 F.3d 402, 410 (9th Cir.1996) (as amended) (internal citations and quotations omitted).

Gallegos v. McDaniel, 124 F.3d 1065, 1070 (9th Cir. 1997).

Under California law, the court weighs five factors in deciding whether to grant a motion for change of venue. These include "'the nature and gravity of the offense, the nature and extent of the news coverage, the size of the community, the status of the defendant in the community, and the popularity and prominence of the victim. [Citation.]'" People v. Adcox, 47 Cal.3d 207, 231 (1988) (quoting People v. Harris, 28 Cal.3d 935, 948 (1981)). As a general proposition, the fact that a defendant has been charged with capital murder is given heavy weight in the analysis, though it is not in itself dispositive. People v. Adcox, at 231. In order for news coverage to support a motion for change of venue it must generally be "extensive and inflammatory." Id. at 232. The other three factors generally support a change of venue when the community is small, the defendant is associated with a group, or described in a way, likely to

inspire community hostility, and when the victim is well-liked or well-known in the community. Id. at 233-34.

In support of his contention that counsel was ineffective in failing to renew the motion to change venue, petitioner relies on voir dire testimony from five jurors, all of whom testified that they had read about the case in the newspaper, as well as a statement made by one juror to the court after the jury was sworn expressing her surprise at the number of panel members who appeared to have "made up their minds." (Reporter's Transcript of Proceedings (RT) at 147-48.)[5] The court has reviewed all of the material submitted by petitioner. Upon completion of said review, the court finds that petitioner has not shown a reasonable likelihood that a renewed motion to change venue would have been granted. Petitioner has therefore failed to establish cognizable prejudice from counsel's failure to renew the motion.

For the foregoing reasons, this court finds that the state court's rejection of this claim was neither contrary to nor an unreasonable application of controlling principles of federal law. This claim should be denied.

C. Decision to Preclude Voir Dire on the Issue of Gang Membership

Petitioner's third claim for relief is that his right to a fair and impartial jury was violated by the trial court's order directing counsel not to mention gangs or gang membership during jury voir dire in light of the court's subsequent ruling allowing the prosecution to introduce evidence of gang membership and activities. The last reasoned rejection of this claim was by the state court of appeal, which set forth the facts relevant to the claim as follows:

> Before trial, defense counsel moved to exclude evidence of gang activity; the prosecutor opposed the motion. The court heard argument and took evidence concerning [petitioner]'s motion. The defense requested assistance with costs to bring Hector Casillas, a

---

[5] The record also reflects that there were nine articles about the crime published in the local newspaper between August 23, 1993 and January 30, 1994. (First Amended Petition, filed July 22, 2002, at 17.) Petitioner does not directly rely on those articles, the last of which was filed four months before the start of his trial, in support of his ineffective assistance of counsel claim. (Id. at 19-20.)

7

>witness from Los Angeles, on this issue. The court stated funds would be made available and indicated it wanted this evidence before ruling on the admissibility of the gang evidence.
>
>The court then stated: "Okay, tomorrow morning we will pick the jury. I will order both sides to refrain from any mention of gang affiliation, gang activity, any mention of gangs whatsoever during the process of voir dire, and probably during the openings unless we get Casillas here in a big hurry. There will be plenty of time during the trial to bring that up if we have to." Defense counsel made no objection to this procedure.
>
>Jury selection was completed and the jury was sworn. The court subsequently heard, outside the jury, further evidence on the motion to exclude gang evidence, including testimony from Casillas. The court ultimately ruled gang evidence was admissible as it related to aiding and abetting, conspiracy, and motive. Defense counsel did not move for a mistrial
>
>The trial court instructed counsel not to mention gangs during voir dire because [petitioner] wanted to exclude gang evidence and the court had not yet ruled on its admissibility. [Petitioner] acquiesced in the court's voir dire procedure, realizing full well the lost opportunity to voir dire on this issue should the court later find gang evidence admissible. When the court indeed later ruled gang evidence admissible, [petitioner] did not move for a mistrial. He cannot now claim the procedure to which he acquiesced constituted a Sixth Amendment violation of his right to a fair and impartial jury.

(People v. Gomez, slip op. at 6-7.)

"The function of the voir dire is to ferret out prejudices in the venire that threaten the defendant's Sixth Amendment right to a fair and impartial jury." U.S. v. Howell, 231 F.3d 615, 627 (9th Cir. 2000) (citing Mu'Min v. Virginia, 500 U.S. 415 (1991)). With two exceptions not applicable here, no particular set of voir dire questions are constitutionally compelled, and the failure to pose particular questions during jury voir dire violates the United States Constitution only when said failure "render[s] the defendant's trial fundamentally unfair." Mu'Min, at 424-26.

Petitioner has made no showing that the trial court's decision to preclude voir dire on gang membership in this case rendered his trial fundamentally unfair. The state court's

/////

8

rejection of this claim was not contrary to applicable principles of federal law. Petitioner's third claim for relief should be denied.

        D.  <u>Failure to Allow Voir Dire on Gang Membership or to Give a Limiting Instruction</u>

Petitioner's fourth claim for relief is that the trial court's failure to allow voir dire on gang membership combined with the court's failure to give a limiting instruction as to the use of evidence of petitioner's gang membership also violated his right to a fair and impartial jury. The last reasoned rejection of this claim is the decision of the state court of appeal, which rejected the claim on the ground that, while the trial court had stated that it "'would *contemplate* drafting' a limiting instruction if such an instruction was not offered by counsel," defense counsel did not request such an instruction and the court had no sua spointe duty to provide one. (<u>People v. Gomez</u>, slip op. at 7.)

A challenge to jury instructions does not generally state a federal constitutional claim. <u>See</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985), <u>cert.</u> <u>denied</u>, 478 U.S. 1021 (1986) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. <u>Middleton</u>, 768 F.2d at 1085; <u>see also</u> <u>Lincoln v. Sunn</u>, 807 F.2d 805, 814 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." <u>Hines v. Enomoto</u>, 658 F.2d 667, 673 (9th Cir. 1981) (citing <u>Quigg v. Crist</u>, 616 F.2d 1107 (9th Cir. 1980), <u>cert.</u> <u>denied</u>, 449 U.S. 922 (1980)); <u>see also</u> <u>Lisenba v. California</u>, 314 U.S. 219, 236 (1941).

To prevail on this a claim, petitioner must show first that the failure to so instruct the jury was error, and second that the error "had a substantial and injurious effect or influence in determining the jury's verdict." <u>California v. Roy</u>, 519 U.S. 2, 5-6 (1996) (per curiam).

1    For the reasons set forth in the preceding section, there was no error in the trial
2  court's decision not to allow voir dire on the issue of gang membership.  Moreover, as noted
3  above, the state court found no duty in the trial court to sua sponte give a limiting instruction
4  concerning the evidence of gang membership and no error in the failure to do so.  Whether
5  viewed in isolation from the trial court's limitations on voir dire, or in combination therewith,
6  petitioner has not shown that the omission of this instruction rendered his trial fundamentally
7  unfair, nor that the omission "had a substantial and injurious effect or influence" on the jury in
8  determining its verdict.  Petitioner's fourth claim for relief should be denied.

   E. <u>Qualification of Dr. Coleman as Expert</u>

   Petitioner's fifth claim is that the trial court erred in ruling that prosecution witness Dr. Coleman was qualified to give expert testimony on the effects of alcohol on the central nervous system and in admitting Dr. Coleman's conclusion that petitioner had formed the mental state required for the charged offenses.  This claim is grounded solely in state law.  (<u>See</u> First Amended Petition, filed July 22, 2002, at 28-35.)  For that reason, it is not cognizable in this federal habeas corpus proceeding and should therefore be denied.

   F. <u>Error in Giving Lying in Wait Instruction</u>

   Petitioner's sixth claim is that the trial court erred in instructing the jury on a theory of lying in wait.  This claim is grounded solely in state law.  (<u>See</u> First Amended Petition, at 36-37.)  For this reason, it is not cognizable in this federal habeas corpus proceeding and should therefore be denied.

   G. <u>Ineffective Assistance of Counsel in Failing to Object to Introduction of Testimony of Hector Casillas from Previous Proceeding</u>

   Petitioner's seventh claim is that his counsel was ineffective in failing to object to introduction of pretrial testimony from witness Hector Casillas.  The last reasoned rejection of this claim was by state court of appeal, which set forth the facts relevant to this claim as follows:

/////

1  At trial, "[o]ne of the theories advanced by the prosecution was
2  that Hopper was shot in retaliation for his acts against Gonzales.
   [Citation.]  The defense had taken the position that at the time of
3  the shooting, [the [petitioner]] was still associated with the gang,
   but was a 'veterano' a person who just 'kicked back' with
4  members of the gang and thus would not become involved in any
   gang retaliation."  While cross-examining [petitioner], the
5  prosecutor referred to Hector Casillas's testimony and asked
   [petitioner] whether, as a gang "veterano," he was obligated to help
6  if the gang was threatened.  Defense counsel objected and asked
   the prosecutor to specifically cite to Casillas's testimony.  The
7  prosecutor then read from Casillas's testimony at the prior
   Evidence Code section 402 hearing.  The trial court had stricken
8  this testimony at the earlier hearing after Casillas invoked his
   privilege against self incrimination.

(People v. Gomez, slip op. at 11-12.)  The state court of appeal rejected petitioner's claim that his counsel was ineffective in making this request or failing to object to the reading of stricken testimony on the grounds that "the record does not indicate why defense counsel elected to proceed in this manner" and that the court would not, on appeal, "second-guess counsel's decision."  (Id. at 12.)

The standards for assessing a claim of ineffective assistance of counsel are set forth in section IIB, supra.  Petitioner claims that his counsel's actions interfered with his right to confront and cross-examine Hector Casillas, and that he was prejudiced because this testimony helped negate the defense testimony that petitioner had accompanied Gonzalez to go drinking and was surprised when he learned Gonsales really intended to confront the victim with a gun.

After review of the record herein, the court finds that petitioner has failed to show a reasonable probability that the outcome of his trial would have been different had counsel objected to the reading of this testimony.  Petitioner's seventh claim for relief should be denied.

H.  Prosecutorial Misconduct

Petitioner's eighth claim is that the prosecutor committed misconduct by showing the jury a photograph of the decedent while he was still alive and "by otherwise seeking sympathy for the decedent."  (First Amended Petition, at 41.)  This claim is grounded solely in

/////

state law.  (See First Amended Petition, at 41-43.)  For this reason, it is not cognizable in this federal habeas corpus proceeding and should therefore be denied.

I. Cumulative Error

Petitioner's final contention is that the cumulative effect of the foregoing alleged errors rendered his trial fundamentally unfair.  For all of the reasons set forward in the preceding sections, petitioner's individual claims of constitutional error are without merit.  Accordingly, his claim of cumulative error should also be denied.

In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 25, 2005.

UNITED STATES MAGISTRATE JUDGE

12
gome0276.mer